Tom McGRATH, Jr., et al.,
Plaintiffs-Appellants,

v.

Caspar W. WEINBERGER,
Defendant-Appellee.

No. 75–1839.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted July 29, 1976.

Decided Sept. 3, 1976.

**250**

James A. Burke, Northern New Mexico Legal Services, Inc., Las Vegas, N. M., for plaintiffs-appellants.

Ruth C. Streeter, Asst. U. S. Atty., Albuquerque, N. M. (Victor R. Ortega, U. S. Atty., Albuquerque, N. M., and Randolph W. Gaines and Dorothy R. Fait, Washington, D. C., of counsel, Social Security Div., Dept. of Health, Ed. and Welfare, on the brief), for defendant-appellee.

Before SETH, BARRETT and DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

Tom McGrath (McGrath) appeals individually and on behalf of all other persons similarly situated from a judgment denying his claim challenging the constitutionality of certain Social Security Administration procedures. McGrath argues that the procedure authorizing the appointment of a representative payee to manage the monetary benefits of a Social Security recipient determined to be incapable of managing them violates the Due Process Clause in that prior notice and an opportunity to contest the determination are not afforded the beneficiary.[1]

This action was filed on November 15, 1974, by McGrath and Dennis Hamblin, individually, and on behalf of all other persons similarly situated, as authorized by

---

1. The challenge is directed at both the statute and regulation relating to the Old Age, Survivors Disability Program, 42 U.S.C.A. § 401 et seq., (Title II) and the Supplemental Security Income Program, 42 U.S.C.A. § 1381 et seq., (Title XVI). The pertinent provisions provide:

When it appears to the Secretary that the interest of an applicant entitled to a payment would be served thereby, certification of payment may be made, regardless of the legal competency or incompetency of the individual entitled thereto, either for direct payment to such applicant, or for his use and benefit to a relative or some other person.

42 U.S.C.A. § 405(j)

When it appears to the Administration that the interest of a beneficiary entitled to a payment under title II of the Act would be served thereby, certification of payment may be made by the Administration, regardless of the legal competency or incompetency of the beneficiary entitled thereto, either for direct payment to such beneficiary, or for his use and benefit to a relative or some other person as the "representative payee" of the beneficiary . . .

20 C.F.R. 404.1601

Fed.Rules Civ.Proc. rule 23(a), (b)(2), 28 U.S.C.A. McGrath and Hamblin were inmates at the New Mexico State Hospital. McGrath had been a patient at the State Hospital for about 35 years prior to his release in March of 1974. Hamblin was released from the Hospital in late 1974. Due to the mental conditions of both McGrath and Hamblin, it was determined that payments under Title II, *supra,* and Title XVI, *supra,* to which they were entitled should be paid, respectively, to a representative payee, who receives the benefit payments and manages the financial affairs of the beneficiary when the beneficiary has been determined to be incapable of handling them. McGrath's sister served as his representative payee. Hamblin's parents acted in this same capacity on his behalf.[2] The trial court related the manner in which McGrath was determined to be incapable of managing his benefits, in finding:

> . . . The determination that Mr. McGrath should have a representative payee was based primarily upon a form submitted by the local Social Security office to the state hospital and filled out and returned by the institution. Attached to the form upon its return to the Social Security office was a memorandum by a staff psychologist indicating that she believed the plaintiff incapable of managing in whole his Social Security benefits. The form was apparently prepared as a result of a staff team evaluation of Mr. McGrath, and it, and a report from the hospital administrator that McGrath spent his money foolishly, were both considered.

[R., Vol. I at 215].

There is no dispute that at no time was McGrath given notice of or an opportunity for a hearing prior to the determination that he was incapable of managing his benefit payments.[3]

Trial was to the court. On appeal the sole issue presented for our review is: whether the Due Process Clause demands prior notice and opportunity to contest when a Social Security beneficiary is alleged to be incapable of managing his own benefits.

### I.

At the onset the government advances a jurisdictional challenge, first presented to the district court on the basis that McGrath has failed to exhaust his administrative remedies. It is axiomatic that a litigant must exhaust his administrative remedies, if such remedies exist, as a prerequisite to invoking the jurisdiction of the federal court. *Martinez v. Richardson,* 472 F.2d 1121 (10th Cir. 1973); *see also Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The clear language of the rule requiring exhaustion of administrative remedies before seeking judicial review does not, however, render the rule simple in application. It has been said, and we believe pertinently so, that "A fundamental distinction must be recognized between constitutional applicability of legislation to particular facts and constitutionality of the legislation . . . We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of legislation." Administrative Law Treatise, Davis, Vol. 3, § 20.04; *see also Public Utilities Commission of California v. United States,* 355 U.S. 534, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958). A further exception to the rule exists in those cases involving the presence of constitutional questions, coupled with a showing of inadequacy of the prescribed administrative relief against the background of threatened or impending irreparable injury flowing from the delay incident to pursuit of the available adminis-

---

**2.** Hamblin pursued administrative relief and is now receiving his benefit payments directly. Since the issues involved in this appeal are moot as to him, he is no longer a party to this action.

**3.** We observe that subsequent to the filing of this suit, the Social Security Administration has modified its procedures. A ten-day advance notice of a proposed payee action is now sent to all legally competent beneficiaries and court appointed guardians.

trative processes. *Greene v. United States,* 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964); *City of Chicago v. Atchison, Topeka & Santa Fe Railway Co.,* 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958); *Aircraft & Diesel Equipment Corp. v. Hirsch,* 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1947).

■ McGrath claims that jurisdiction exists under 5 U.S.C.A. §§ 701, 702; 28 U.S.C.A. § 1331; 28 U.S.C.A. § 1343(3); 28 U.S.C.A. § 1361; and 28 U.S.C.A. §§ 2201 and 2202.[4]

The government strongly argues that the Social Security Act provides the exclusive mechanism for review in aggrieved beneficiaries cases.[5] It relies on *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) for the rule that a district court does not have jurisdiction under 28 U.S.C.A. § 1331 or 28 U.S.C.A. § 1361 to entertain an action under Title II of the Social Security Act. In *Salfi, supra,* the action challenged the Social Security Act's *denial* of claimed benefits based upon duration-of-relationship eligibility requirements of certain survivors of deceased wage earners. The court held that a *denial* of a claim under 42 U.S.C.A. § 405(h) of the Act did not give rise to federal court jurisdiction and that the only avenue for judicial review there was that following a hearing before the Secretary, with attendant findings and decisions for review.

The recent decision by the Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) settles the dispute without equivocation in relation to the case at bar. There Eldridge contended that the Due Process Clause of the Fifth Amendment required that the Social Security Administration provide him notice and an opportunity for an evidentiary hearing prior to *terminating* his disability benefits. The agency had terminated Eldridge's benefits based upon reports from Eldridge's physician and a psychiatric consultant and other information acquired. Eldridge relied upon *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), which established a right to an evidentiary hearing prior to termination of welfare benefits. The district court and the appellate court held that Eldridge had been denied due process of law and that he was entitled to notice and a right to an evidentiary hearing prior to termination of his disability benefits. The Supreme Court reversed, holding that judicial review under § 405(g), *supra,* cannot be had—in a purely jurisdictional sense—until the Secretary has rendered a "final" decision. That requirement had been met in Eldridge's case. In addition, the Court pointed to the "waivable" aspect of jurisdiction under § 405(g): the requirement that the administrative remedies prescribed by the Secretary be exhausted. The Court held that Eldridge's claim to a pre-deprivation hearing as a matter of constitutional right must fail inasmuch as he could obtain full relief at a post-deprivation hearing under the prescribed rules, insofar as his *substantive claim* is concerned. However, the Court, having recognized that the Secretary's termination of Eldridge's disability benefits did constitute a *final decision,* held that the Court did have jurisdiction over *his due process constitutional claim.* In so holding the Court observed:

. . . [T]he core principle that statutorily created finality requirements should, if possible, be construed so as not to cause crucial collateral claims to be lost and potentially irreparable injuries to be suffered remains applicable.

424 U.S. at 331, n. 11, 96 S.Ct. at 901, n. 71.

■ Our consideration of this issue exposes no significant interest to be served by requiring McGrath to exhaust administrative remedies. The agency's expertise would not aid the court in ruling on the matter of constitutional law involving the

---

**4.** We need not consider in any detail the asserted basis of jurisdiction resting on the Declaratory Judgment Act, 28 U.S.C.A. § 2201. This statute confers no additional subject matter jurisdiction on the Federal Courts. *Skelly Oil*

*Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950); *Bard v. Seamans,* 507 F.2d 765 (10th Cir. 1974).

**5.** See 42 U.S.C.A. § 405(g) and (h).

due process claim; a detailed record involving the factual background from which this controversy arose would not aid the courts in ruling on the constitutionality of these procedures inasmuch as the issue is one of law. If McGrath should be required to exhaust the procedures provided under the Act and prevail, his constitutional due process challenge would be lost. *See McKart v. United States,* 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969).

We hold that jurisdiction exists under the Administrative Procedures Act, 5 U.S.C.A. § 702. *Ryan v. Shea,* 525 F.2d 268 (10th Cir. 1975). We need not consider the additional basis for jurisdiction asserted by McGrath.

## II.

■ We shall consider the merits of this appeal. McGrath argues that the Due Process Clause demands that prior notice and an opportunity for a hearing be afforded Social Security beneficiaries who are determined to be incapable of managing their benefits. The trial court concluded that the procedures whereby a representative payee is appointed to manage the financial affairs of a beneficiary who is determined to be incompetent, are not invalid as being violative of procedural due process. The court stated:

> It is concluded that curtailment of the plaintiff's right to manage his own benefits is not such a grievous loss that it outweighs the governmental interest involved and thus mandates prior notice and an opportunity to be heard.
> [R., Vol. 1 at 219].

McGrath urges that the court erred in applying a balancing of interests test. We disagree. In *Eldridge, supra,* the Court considered whether the Due Process Clause of the Fifth Amendment requires that prior to the termination of Social Security disability benefit payments the recipient be afforded an opportunity for an evidentiary hearing. The Court held that Eldridge was not entitled to a hearing. In so holding, the

Court recognized that due process generally requires consideration of three factors:

> [F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
> 424 U.S. at 335, 96 S.Ct. at 903.

■ Our consideration of the interests discussed in *Eldridge,* in light of the procedures involved herein, convinces us that the decision of the district court is correct.

The private interest affected in this action is the free use of Social Security benefits. There is not a termination of benefits, as was the case in *Eldridge,* but rather a deprivation of free use of benefits. Since the Supreme Court in *Eldridge* held that due process was not violated by terminating benefits without prior opportunity for an evidentiary hearing, it would be an unwarranted departure on our part to hold that due process requires prior notice and an opportunity for a hearing where there has been no termination of benefits.

We believe that the risk of an erroneous deprivation of the beneficiary's interest in the free use of his benefits appears to be relatively slight. The determination of incompetency to manage benefits is based primarily on evaluations by psychologists and staff members who have observed the beneficiary.[6] It would be unwarranted conjecture on our part to speculate that such evaluations reflect anything other than a sincere determination that the best interests of the beneficiary would be served by appointing a representative payee to manage the financial affairs of the beneficiary. Accordingly, we consider the risk of an erroneous deprivation of the free use of benefits to be minimal. In the event, however, that one has been wrongly denied the

6. *See* [R., Vol. 1 at 215].

free use of his benefits the procedures available for reviewing such a decision appear to us to be fair and adequate.

Finally, we opine that the governmental interest involved is substantial. Oral hearings in capability determination matters would involve considerable time and expense. We agree with the government's contention that requiring a prior hearing would place it in "the anomalous position of either paying benefits to a person who is incapable of managing these benefits or, on the other hand, holding up all benefit payments until a capability hearing decision is rendered". [Supp. Brief at 5]. Inasmuch as the governmental interest is substantial, it outweighs the private interest of the beneficiary.

We hold that the Due Process Clause does not demand that prior notice and an opportunity for a hearing be afforded Social Security beneficiaries who are determined to be incapable of managing their own benefits.

WE AFFIRM.